CITY OF TIFFIN, Appellant,

v.

McEWEN, Appellee.

[Cite as *Tiffin v. McEwen* (1998), 130 Ohio App.3d 527.]

Court of Appeals of Ohio,
Third District, Seneca County.

No. 13–98–28.

Decided Nov. 20, 1998.

*Randy F. Hoffman,* City Prosecutor, for appellant.

*Kristopher B. McEwen, pro se.*

SHAW, Presiding Judge.

This is an appeal by the city of Tiffin from the judgment of the Municipal Court of Tiffin, Ohio, dismissing the charges against defendant Kristopher B. McEwen and finding Tiffin Codified Ordinance 509.11(a) to be an unconstitutional exercise of police power in violation of the defendant's rights under the First Amendment to the United States Constitution.

At approximately 1:57 a.m. on May 9, 1998, Tiffin Police Officer David Horn was sitting in a police cruiser parked at the far end of Tiffin City Lot # 5 working on reports. As Officer Horn was working, he heard "music that was loud and starting to get louder," coming from the direction of South Washington street. Officer Horn determined that the music was emanating from an approaching vehicle and drove through the parking lot towards South Washington street, a

distance of over two hundred feet. He pulled out behind the passing vehicle, which was being driven by defendant Kristopher B. McEwen, and initiated a traffic stop. He issued defendant a citation for violating Tiffin Codified Ordinance 509.11, "Operation of Radios or Other Soundmaking Devices or Instruments in Vehicles," which provides:

"(a) It is unlawful for any person operating or occupying a motor vehicle within the City to operate or amplify the sound produced by a radio, tape player or other soundmaking device or instrument from within the motor vehicle so that the sound is: Plainly audible at a distance of 100 feet or more from the motor vehicle.

"(b) The provisions of this section shall not apply to any law enforcement motor vehicle equipped with any communication device necessary in the performance of law enforcement duties or to any emergency vehicle equipped with any communication device necessary in the performance of any emergency procedures.

"(c) The provisions of this section do not apply to the noise made by a horn or other warning device required or permitted by state law.

"(d) 'Plainly audible' means any sound produced by a radio, tape player or other mechanical or electronic soundmaking device, or instrument, from within the interior or exterior of a motor vehicle, including sound produced by a portable soundmaking device, that can be clearly heard outside the vehicle by a person using his normal hearing faculties, at a distance of 100 feet or more from the motor vehicle.

"(e) Any law enforcement personnel who hears a sound that is plainly audible as defined herein, shall be entitled to measure the sound according to the following standards:

"(1) The primary means of detection shall be by means of the officer's ordinary auditory senses, so long as the officer's hearing is not enhanced by any mechanical device, such as a microphone or hearing aid.

"(2) The officer must have a direct line of sight and hearing to the motor vehicle producing the sound so that he can readily identify the offending motor vehicle and the distance involved.

"(3) The officer need not determine the particular words or phrases being produced or the name of any song or artist producing the sound. The detection of a rhythmic bass reverberating type sound is sufficient to constitute a plainly audible sound.

"(f) The motor vehicle from which the sound is produced must be located (stopped, standing or moving) within the City. Parking lots and driveways are included.

"(g) The penalty for a violation of this section shall be a minor misdemeanor."

The officer's stop was based entirely on his own observations, and there is no indication in the record that any other person was annoyed or harassed by the volume of defendant's music. A bench trial in the matter was set for May 27, 1998. At the close of the city's case-in-chief, the court *sua sponte* dismissed the case and found that the ordinance unconstitutionally infringed on the defendant's rights under the First Amendment to the United States Constitution.[1] Although the trial court did not file an opinion explaining its reasoning, the court stated on the record that it believed that the ordinance proscribed First Amendment expression and that a restriction on such expression is only "a proper exercise of police power when that First Amendment expression annoys someone else." Because there was no "victim" in this case, the court evidently believed that the ordinance as applied exceeded the city of Tiffin's police powers. The city now takes this appeal, and asserts one assignment of error:

"The trial court erred in dismissing the case against defendant while finding enforcement of Tiffin City Ordinance Section 509.11(a) an unconstitutional infringement of defendant's First Amendment right to free expression."

Our reading of the record indicates that the trial court found the Tiffin ordinance to be unconstitutional because the ordinance allowed for a conviction in this case and others like it, where there is no evidence that any member of the community was "annoyed" by defendant's loud music. The court apparently believed that the Home Rule provisions of the Ohio Constitution place limits upon the authority of cities to enact ordinances that affect First Amendment activities. Although the basis for the court's decision is not entirely clear, it does not appear that the court directly considered the question of whether the statute comports with the requirements of the First Amendment. Thus, we will address this case primarily as a question of the limits of municipal authority under Ohio's Home Rule provisions as applied to the facts of this case, rather than a direct First Amendment challenge.[2]

---

1. The record refers to an attempt by Officer Horn to videotape his encounter with defendant's vehicle as well as the music emanating from that vehicle, but that videotape was not introduced into evidence. Although the record indicates that defendant had planned to play the tape in his case-in-chief, the court's determination that the ordinance was unconstitutional made it unnecessary for defendant to present a case. Any evidence from the videotape is therefore not before this court.

2. While this case is not a direct First Amendment challenge to the ordinance, we have little doubt that the ordinance satisfies the requirements of the First Amendment. We observe that

■ At the outset, we observe that it is beyond question that Ohio municipalities are permitted to regulate noise. See *State v. Dorso* (1983), 4 Ohio St.3d 60, 64, 4 OBR 150, 153–154, 446 N.E.2d 449, 452–453. R.C. 715.49(A) provides:

"Any municipal corporation may prevent riot, gambling, noise and disturbance, and indecent and disorderly conduct or assemblages, preserve the peace and good order, and protect the property of the municipal corporation and its inhabitants."

We have found no authority for the trial court's contention that the noise that the ordinance prohibits "can only be the subject of a proper exercise of police power when that First Amendment expression annoys someone else" and we do not believe that the trial court's formulation is a correct statement of the law. Nevertheless, we will review the question of whether the means chosen by the city to regulate noise are permissible under the Ohio Constitution.

■ We must begin by observing that all legislation is strongly presumed to be constitutional. See *State v. Dorso*, 4 Ohio St.3d at 61, 4 OBR at 150–151, 446 N.E.2d at 450–451; *State v. Smith* (1997), 80 Ohio St.3d 89, 99, 684 N.E.2d 668, 681. Any doubts regarding the validity of a legislative enactment should be resolved in favor of the enactment. *State v. Gill* (1992), 63 Ohio St.3d 53, 55, 584 N.E.2d 1200, 1201. Furthermore, courts must apply all pertinent rules of construction and presumptions to uphold the constitutionality of a statute or ordinance. *State v. Dorso*, 4 Ohio St.3d at 61, 4 OBR at 150–151, 446 N.E.2d at 450–451.

■ Municipalities are granted a significant degree of sovereignty under Section 3, Article XVIII of the Ohio Constitution, the Home Rule Amendment:

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other regulation, as are not in conflict with general laws."

However, the Ohio Supreme Court has recognized that this authority is not absolute. In order to be a valid exercise of the city's police powers, an ordinance "must directly promote the general health, safety, welfare or morals and must be reasonable, the means adopted to accomplish the legislative purpose must be suitable to the end in view, must be impartial in operation, must have a real and substantial relation to such purpose and must not interfere with private rights beyond the necessities of the situation." *Teegardin v. Foley* (1957), 166 Ohio St.

---

the ordinance is facially neutral as to content, cf. *Norton Outdoor Advertising v. Arlington Hts.* (1982), 69 Ohio St.2d 539, 23 O.O.3d 462, 433 N.E.2d 198, and we do not believe that the ordinance is so vague that it fails to give persons of ordinary intelligence fair notice what conduct it forbids. See *State v. Dorso* (1983), 4 Ohio St.3d 60, 61, 4 OBR 150, 150–151, 446 N.E.2d 449, 450–451.

449, 2 O.O.2d 462, 143 N.E.2d 824, paragraph one of the syllabus, quoted in *Hausman v. Dayton* (1995), 73 Ohio St.3d 671, 678, 653 N.E.2d 1190, 1195–1196.

Applying the *Hausman* test, we believe that (1) the ordinance directly promotes the general welfare and safety of the community by reducing noise pollution, (2) the ordinance is reasonable in targeting only sounds "plainly audible" at a distance of one hundred feet, (3) the restrictions on amplified noise from motor vehicles are suitable to achieving the goal of reducing noise pollution for the welfare and safety of the community, (4) the ordinance operates impartially and without regard to content on all amplified sounds from motor vehicles "plainly audible" at a distance of one hundred feet, (5) the ordinance has a real and substantial relation to the purpose of reducing noise pollution, and (6) the ordinance does not interfere with the First Amendment rights of defendants beyond what is necessitated to achieve its goals.

The ordinance does not prohibit all amplified sound in motor vehicles; it merely requires that amplification be restricted to a level such that the sound is not "plainly audible" at a distance of one hundred feet. We believe that the trial court's additional requirement of an "annoyed victim" would drastically alter the effectiveness of the ordinance for no good reason. In short, it seems clear that the ordinance is meant to protect the entire community and that it does not unreasonably restrict private rights to further that goal. For the foregoing reasons, the city of Tiffin's sole assignment of error is sustained. The judgment of the Municipal Court of Tiffin is reversed and the cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

THOMAS F. BRYANT and HADLEY, JJ., concur.